WARREN COUNTY COURT OF COMMON PLEAS.

·MELVIN HELMHOLTZ, PETITIONER-APPELLANT, v. UNION
BUILDING AND CONSTRUCTION COMPANY, RESPOND-
ENT-APPELLEE.

Decided September 8, 1944.

For the petitioner-appellant, *Slingland, Houman & Bern-stein.*

For the respondent-appellee, *George E. Meredith.*

BOWERS, C. P. J.   The petitioner suffered an accident in the form of an injury to his left leg, which required amputation on October 11th, 1940.   There seems to be no controversy

over the fact that the stump, where the leg nad been amputated, had healed completely on March 6th, 1941, but because of the fact that it was not proper to fit an artificial appliance to the stump at that time, and which was not done until July 13th, 1941, the petitioner claims temporary compensation for that period of time from March 6th to July 13th, 1941. This is the sole question to be determined in the appeal from the decision of the Deputy Commissioner which dismissed petitioner's petition by his findings dated July 29th, 1943.

Both the petitioner and respondent having relied principally upon the case of *Vishney* v. *Empire Steel and Iron Co.*, 87 *N. J. L.* 481; 95 *Atl. Rep.* 143, 144, in their arguments, it is well to turn to this case for guidance. The court in that decision stated:

"Temporary, as distinguished from permanent disability under the Workmen's Compensation Act, is a condition that exists until the injured workman is as far restored as the permanent character of the injuries will permit. An apt illustration is a case where there has been a loss of both arms. The temporary disability to be considered in such an instance is the physical state of the patient until the stumps are healed and he is able to get about," &c.

The petitioner maintains under his interpretation of this decision, that the petitioner cannot "get about" until he has an artificial limb. The respondent contends that the artificial limb has no bearing directly upon the case. I am inclined to the view that the latter is correct in his interpretation of the decision referred to.

*R. S.* 34:15–15; *N. J. S. A.* 34:15–15 directs:

"When an injured employee may be partially or wholly relieved of the effects of a permanent injury, by use of an artificial limb or other appliance * * * the Workmen's Compensation Bureau, acting under competent medical advice, is empowered to determine the character and nature of such limb or appliance and to require the employer or his insurance carrier to furnish the same."

The statute is entirely silent as to compensation to be paid for any temporary disability until the time of the fur-

nishing of the artificial limb, if directed by proper authorities. The artificial limb was granted in this case.

It was undoubtedly the intention of the legislature to be generous to those who had unfortunately lost a valuable portion of his or her body and it is further undoubtedly true that this additional grant of an artificial limb or other appliance to the unfortunate one was an extra obligation to be imposed upon the employer out of whose business or direction the injury had been suffered. It is the belief of this court that the furnishing of an artificial limb or appliance was an entirely separate matter from the healing of the wound, and the appliance could just as well be ordered separately by the proper authority during the healing of the wound or sometime after the stump or portion of the body to which it was to be attached had healed.

The quotation in the Vishney case, that the temporary disability should be considered "until the stumps are healed and he is able to get about" is good law and clear, in the opinion of the court. It clearly designated that when the stumps were healed, the injured person would next arise from his bed or chair and "get about." As reasonable people, we know that a man with an amputated leg or legs or arms will "get about" in a different manner than if his limbs or arms were still attached to his body. In the case of a lost leg, the injured person would "get about" with the use of crutches or probably a wheelchair. The Vishney decision could not have held that the words "get about" would definitely mean the successful use of an artificial limb or arm, because this decision could not be absolutely followed in every case, inasmuch as the remaining stump might be negligible and an artificial limb could not be fitted to it. If the leg were cut off close to the hip, or the arm close to the shoulder, there could be no artificial leg or appliance in many cases and, if the Vishney case held that until an artificial appliance was fitted temporary disability would continue, then such temporary compensation would continue during the life of the injured one, or so long as he or the physicians kept attempting to attach an appliance to the body, and which might be the source of unlimited litigation. It would, likewise, place

an unfair burden upon one employer or give an unfair advantage to one injured person over another. For instance, where the one applicant's leg was amputated a couple of inches or so shorter than another person's injured limb, if an appliance could be fitted to one and not to the other and it took months longer for one person's leg to be ready for the limb and another person's leg could not be fitted to an artificial appliance, if temporary compensation were paid to the one who would receive the limb until it was fitted and to the other only until the stump had healed, there would not be the equitable adjustment of injured employees' bodies contemplated by the statute, which is based upon fairness and justice to both the employer and the employee. The mere granting of the artificial appliance to one who can use it is a generous and most worthy act directed by the legislature under the circumstances to the injured employee, and to add upon the generosity of the gift of the appliance, even though worthy and deserving, temporary compensation against the employer until it be fitted is not, in the opinion of the court, what the statute contemplated as written.

It is the further opinion of this court that the temporary disability mentioned in the Vishney case, which should be paid "until the stumps are healed and the patient able to get about," is speaking of two instances only, and they are, if the stumps are healed and the patient is "getting about," as contrasted to lying in bed or under the care of a physician, no matter if it be by wheelchair, crutches, or sitting in ordinary chairs around the house, he is then "getting about" under the decision of the court.

It is therefore the determination of this court that the petitioner is not entitled to temporary compensation for the period of time between March 6th, 1941, when it is agreed between the parties that the stump of his leg had healed, and July 13th, 1941, at which time it is agreed that the artificial limb was fitted, and therefore it is ordered that the petition in the above entitled matter be hereby dismissed and the judgment of the court below be affirmed.